**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DOMINICK N. STEPPAN, # A-90315,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-0153-SMY** |
| | ) | |
| **SCOTT THOMPSON,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In May 2009, Petitioner Dominick N. Steppan was convicted of the attempted first-degree murder of Kevin Hambrick and aggravated discharge of a firearm[1] following a jury trial in Massac County, Illinois. *People v. Steppan*, Massac County Circuit Court No. 08-CF-161. He was sentenced to 50 years in prison, and is now in custody at Pinckneyville Correctional Center.

On February 10, 2016, while he was incarcerated at Menard Correctional Center, Steppan filed the instant Petition pursuant to 28 U.S.C. § 2254. (Doc. 1). He filed an "Amendment with Supporting Facts"[2] accompanied by a Memorandum of Law on March 10, 2016 (Doc. 12) in which he raises two grounds for relief:

1. He was not proven guilty of attempted murder beyond a reasonable doubt.

2. Trial counsel was ineffective for failing to impeach witness Connie Hambrick or introduce her prior inconsistent statements as substantive evidence.

(Doc. 1, pp. 19-20; Doc. 12, p. 2).

---

[1] On direct appeal, the aggravated discharge conviction was vacated; Steppan's sentence was unaffected. (Doc. 19-1, p. 12).

[2] According to Steppan's motion seeking leave to amend, he intended his Amendment to supplement to the original Petition in order to clarify his claims, rather than to replace his original pleading. (Doc. 6, p. 1).

Steppan seeks a writ of habeas corpus vacating his conviction and sentence, and either releasing him or remanding the matter for retrial. (Doc. 1, p. 18; Doc. 12-1, p. 16).

Respondent opposes issuance of the writ, arguing that relitigation of Steppan's habeas claims is barred because the state courts' determination of the issues was legally and factually reasonable. (Doc. 18). Steppan replied to Respondent's Answer (Doc. 29). This matter is now ripe for resolution. For the reasons discussed below, Steppan's Section 2254 Petition will be **DENIED**.

<u>**Relevant Facts and Procedural History**</u>

**State Trial Proceedings[3]**

At approximately 11 p.m. on October 17, 2008, someone fired numerous shots into a second-story window of the home of Kevin and Connie Hambrick in Metropolis, Illinois. (Doc. 19-1, p. 1). Dominick Steppan was arrested after investigators learned that he had made threatening phone calls to Kevin Hambrick earlier on the day of the incident. Steppan and the Hambricks knew each other because Steppan was involved and living with Connie Hambrick's sister, Mary Jo Mason. (Doc. 19-1, p. 2).

At Steppan's trial, Kevin Hambrick's niece, Morgan Siebert, testified that between 1 and 2 p.m. on October 17, 2008, she answered a call at her workplace from "Dominick," who said he was going to "kick [her] uncle's ass" and demanded Kevin's telephone number. (Doc. 19-1, p. 1). Kevin and Connie Hambrick, Morgan Siebert, and Morgan's husband all worked together at the Super Museum in Metropolis. Later that day, Morgan's husband answered another call to the museum from Dominick. The caller was looking for Kevin because they were going to "have it

---

[3] This factual summary is derived from the detailed descriptions by the Illinois Appellate Court, Fifth District, in its Rule 23 Orders affirming Steppan's conviction on direct appeal (Doc. 19-1) and affirming the denial of his post-conviction petition. (Doc. 19-2). The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence, which Steppan has not done. 28 U.S.C. § 2254(e).

out." (Doc. 19-1, p. 1).

Connie Hambrick testified that she and Kevin lived in a two-story home near the Sonic restaurant in Metropolis. Their bedroom is in the front of the house, and the headboard of the bed is in front of two large upstairs windows. Early in the evening of October 17, 2008, Kevin and Steppan had a heated telephone conversation. Steppan called again at about 9 p.m., and Connie took the call so that Kevin would not have to speak to Steppan again, as he was still upset. Steppan told Connie that he planned to kill Kevin. She assumed he had been drinking because he slurred some of his words. Steppan told Connie that he loved her and the children and his dispute was only with Kevin. (Doc. 19-1, p. 2).

At about 11:30 p.m., Connie came into the bedroom after taking a shower; Kevin had fallen asleep on the bed while watching television. After Connie sat on the bed, she saw a flash in her peripheral vision and heard a gunshot. She screamed and pushed Kevin from the bed. She then called 9-1-1. (Doc. 19-1, p. 2).

Kevin Hambrick testified that the family's home was next to a business called Bill's Barbecue. *Id.* Steppan had visited the home the weekend before the incident and talked about having a .40-caliber handgun that was kept in his girlfriend's purse. Kevin got a phone call from Steppan between 5 and 6 p.m. on October 17, 2008 in which Steppan said he wanted to "kick [Kevin's] ass" because Steppan thought Kevin had told Mary Jo Mason's daughter that Steppan was physically abusive to Mary Jo. (Doc. 19-1, p. 2). Kevin testified that he told Mary Jo's daughter he thought it was possible Steppan was being abusive, and asked Mary Jo directly if that had happened. When Mary Jo denied it, he felt the matter was concluded. Late on October 17, 2008 Kevin was awakened by Connie screaming that "Dominick is shooting up our house." (Doc. 19-1, p. 2). Kevin heard shots, and he began screaming to the children and others in the house to

get down on the floor. He informed the officers who responded to the 9-1-1 call that he suspected Steppan was the shooter based on the two threatening phone calls and Steppan's statement from a week before that he possessed a handgun.

The jury also heard testimony from Connie Hambrick's daughter, Teri and her husband Dustin, both of whom lived in the Hambrick home, as well as from Connie's teenage daughter and her friend who were in the home on the night of the shooting. (Doc. 19-1, pp. 2-3). Teri and Dustin both heard the gunshots and Dustin saw the male shooter outside the house but could not identify him. (Doc. 19-1, p. 3). About a week before the incident, Steppan had told Teri that Mary Jo carried a .40-caliber gun in her purse for him. Dustin also heard that conversation, but neither Teri nor Dustin saw the gun. *Id.* Connie's teenage daughter (D.M.) and her friend heard the shots, saw the outline of a man outside the house, and saw sparks or "fire" coming out of his gun. (Doc. 19-1, pp. 2-3).

Jordan Panell, who was standing outside the home of Michael Labelle, across the street and two houses down from the Hambricks, testified that he heard shots fired at about 11 p.m. on October 17, 2008. After the shots, he saw a man running from the direction of the shots to the Sonic restaurant. (Doc. 19-1, p. 3). Michael Labelle told the jury that while he and Panell were talking outside his home, he heard a sound like a firecracker. *Id.* When he turned to look, he saw a man in a black hoodie aiming a gun upwards at a window of a house. When the man finished shooting, he went toward the Sonic restaurant. *Id.*

Mary Jo Mason testified that she never carried a gun in her purse and had no gun in her home or vehicle. (Doc. 19-1, p. 3). On October 17, 2008, she came home at about 10 p.m. to find Steppan there, intoxicated. She drove him to a Sonic restaurant in Metropolis. While she was parked in the Sonic lot, Steppan left the vehicle briefly. They arrived back home at approximately

11:45 p.m. that night. *Id.* Mary Jo gave statements to the police soon after the incident. A recording of one statement was played for the jury in which she said that she had dropped Steppan off at a barbecue restaurant next door to the Hambrick home and then drove to the Sonic restaurant to wait for him as he had instructed. (Doc. 19-1, p. 4). When Steppan returned to her vehicle at the Sonic, he was out of breath.

Officer Griffey of the Metropolis Police testified that Steppan told him he would not have shot at the house if he had known children were inside. (Doc. 19-1, p. 4). During their conversation, Steppan mimicked shooting a gun by raising his hands up over his head rather than straight ahead. Officer Griffey testified that the gesture was significant to him because police had not informed Steppan that shots had been fired upward into the second floor of the house. *Id.*

Illinois State Police Officer Sopczak testified that he found 9 spent shell casings in the Hambricks' front yard and that 9 bullets were found inside the home. (Doc. 19-1, p. 4). Two bullets went through the second-floor window and 7 bullets went through the wall behind the headboard of the Hambricks' bed. One bullet passed through the headboard and lodged in the center of a pillow. Two more bullet holes were in the master bathroom. *Id.* A firearms expert testified that all 9 shell casings came from the same gun, a .40-caliber Hi-Point.

The jury found Steppan guilty on May 1, 2009. (Doc. 19-1, p. 5). He was sentenced to 50 years, plus an additional extended term of 20 years. (Doc. 19-1, p. 11; Doc. 19-12, pp. 17-20; 161). Upon reconsideration on August 20, 2009, the trial court reduced the sentence to 50 years. (Doc. 19-1, p. 11; Doc. 19-12, pp. 21-23, 173-74).

## Direct Appeal

Steppan raised a number of issues on direct appeal, including a speedy trial violation, failure to prove him guilty of attempted murder beyond a reasonable doubt, prosecutorial

misconduct, and failure to conduct a fitness examination. (Doc. 19-1, pp. 5-12; Doc. 19-3, pp. 7-8). He argued the evidence was insufficient to show that he had the intent to kill but was instead consistent with an act of intimidation. (Doc. 19-3, pp. 20-25).

The appellate court found that Steppan's action of shooting a gun into a home which appeared to be occupied at the time, and where he knew children lived, sufficiently proved the intent element of the crime. (Doc. 19-1, p. 7). On April 15, 2012, the appellate court affirmed Steppan's conviction and sentence for attempted murder but vacated the partial judgment of conviction for aggravated discharge of a firearm, because there was no separate sentence imposed for the discharge offense. (Doc. 19-1, pp. 11-12). Steppan's petition for leave to appeal ("PLA") to the Illinois Supreme Court, arguing that he was not proven guilty beyond a reasonable doubt, was denied on September 26, 2012. (Doc. 19-6).

### Postconviction Petition and Appeal

Steppan filed his *pro se* petition for post-conviction relief on June 2, 2011. (Doc. 19-12, pp. 195-96; Doc. 19-13, pp. 1-14). He argued that the prosecutor's misconduct denied him a fair trial, and that counsel's failure to impeach witness Connie Hambrick with her prior inconsistent statements constituted ineffective assistance. Connie testified at trial that Steppan told her in their phone conversation the night of the incident that he was going to kill Kevin Hambrick. However, in three written statements she gave to police shortly after the incident, she never stated that Steppan explicitly threatened to kill Kevin. (Doc. 19-2, p. 2).

Counsel was appointed for Steppan and filed an amended petition raising additional issues relating to trial counsel's performance, as well as alleged due process violations. (Doc. 19-13, pp. 55-70). Following an evidentiary hearing, the trial court denied relief on May 23, 2013. (Doc. 19-13, pp. 124-27).

On appeal, Steppan focused only on the claim of ineffective assistance with respect to counsel's failure to impeach Connie Hambrick with her prior inconsistent statements or to introduce the statements as substantive evidence that Steppan never threatened to kill Kevin Hambrick and did not intend to kill him. (Doc. 19-7, pp. 2, 4, 13-30). The appellate court noted that the trial court failed to specifically address that issue when it denied the post-conviction petition. (Doc. 19-2, p. 3).

The appellate court first examined whether Connie's prior statements were inconsistent with her trial testimony. She initially told police that Steppan told Kevin over the phone he would "kick Kevin's ass," and later told Connie that Kevin was going to pay for what he said about Steppan. (Doc. 19-2, p. 4). She also told police officers that Steppan made other threats of harm, but no specific description of those threats was included in her statements. (Doc. 19-2, p. 5). At trial, Connie testified that Steppan threatened to kill Kevin. The appellate court agreed with the State's position that "Connie's trial testimony elaborated on the threats [Steppan] made and were more in the nature of an omission rather than an inconsistency." *Id.* It further noted that defense counsel's cross-examination pointed out the discrepancy between Connie's statements to police, her trial testimony, and her failure to tell police about the death threat. *Id.*

Turning to the question of whether Steppan's trial counsel was ineffective, the appellate court concluded that defense counsel's cross-examination was adequate and her decision not to seek the admission of Connie's police statements was prudent given that the statements contained information that would have been harmful to her client. (Doc. 19-2, p. 6). The court also concluded that in light of ample evidence of his guilt, Steppan failed to establish that he was prejudiced by counsel's performance. *Id.*

Steppan filed a timely PLA, arguing counsel's ineffectiveness based on the same matters

raised before the appellate court. (Doc. 19-10). The PLA was denied on January 20, 2016. (Doc. 19-11). This habeas corpus action followed.

**Legal Standards**

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("the AEDPA"). The 1996 AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Habeas is *not* merely another round of appellate review. 28 U.S.C. § 2254(d) restricts habeas relief to cases where the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman*, 690 F.3d at 814 (quoting *Williams*, 529 U.S. at 407).

Federal habeas review serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). The Supreme Court has repeatedly emphasized that the Section 2254(d)

8

standard "is intentionally 'difficult to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), and *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).

Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "A state court's decision is reasonable, even if incorrect in our independent judgment, so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017) (internal citations omitted). For habeas relief to be granted, the state court's application of federal precedent must have been "objectively unreasonable," meaning "something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003). (internal citations omitted).

In addition to the requirement for timely filing under the AEDPA, a habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Bolton v. Akpore*, 730 F.3d 685, 694-696 (7th Cir. 2013). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); see also 28 U.S.C. § 2254(c). Under the Illinois two-tiered appeals process, petitioners such as Steppan must fully present their claims not only to an

intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id.*

**<u>Analysis</u>**

Respondent concedes that Steppan has exhausted his state court remedies. (Doc. 18, p. 7). He does not contest Steppan's assertion that the habeas Petition was timely filed, nor does he claim that the grounds asserted for relief have been procedurally defaulted. However, Respondent argues that the AEDPA bars relitigation of the grounds raised by Steppan because the state reviewing court's resolution of the issues was legally and factually reasonable. *Id.* The Court addresses each ground for relief raised by Steppan below.

**The State did not Prove Steppan Guilty Beyond a Reasonable Doubt**

An assertion that the evidence was insufficient to support a conviction beyond a reasonable doubt presents a federal claim that is cognizable on habeas review. *Jackson v. Virginia*, 443 U.S. 307, 321 (1979); *In re Winship*, 397 U.S. 358 (1970). The relevant decision is the decision of the last state court to consider the issues raised in the habeas petition. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). On the issue of whether the State proved Steppan guilty beyond a reasonable doubt, the relevant decision is the decision of the Illinois Appellate Court affirming Steppan's conviction on direct appeal. (Doc. 19-1).

On direct appeal, the state court articulated the correct standard, *i.e.*, "whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt upon viewing the evidence in the light most favorable to the State." (Doc. 19-1, p. 6, citing *People v. Schott*, 582 N.E.2d 690, 697 (Ill. 1991); *People v. Collins*, 478 N.E.2d 267, 277 (Ill. 1985) (quoting *Jackson*, 443 U.S. at 319)). The court noted that under Illinois law, to prove a charge of attempted first-degree murder,

10

the State must show that (1) the defendant performed an act constituting a substantial step toward the commission of the murder, and (2) the defendant possessed the specific intent to kill. (Doc. 19-1, p. 6).

Steppan's argument focused on the intent element, asserting that he could not be found guilty of attempted murder for shooting into the ceiling of a house. The state court, in addressing this claim, looked to a previous Illinois appellate decision affirming a murder conviction where the defendant shot into a home and the bullet ricocheted, killing an occupant. *Id.*, citing *People v. Washington*, 628 N.E.2d 351 (Ill. App. 1993). The *Washington* court held that a murder conviction could be supported by "intent that is not specific" and that the action of deliberately shooting into a home known by the defendant to be occupied "showed knowledge of a strong probability of death or great bodily harm." (Doc. 19-1, p. 6). Steppan attempted to distinguish *Washington* by pointing out that the defendant in that case knew people were inside the home because he had just seen people in the doorway before he fired at the house. (Doc. 19-1, p. 7; Doc. 19-3, pp. 21-25).

Summarizing the evidence in Steppan's case, the state court noted: the shooting took place at 11 p.m. on a Friday night; lights were on in the room into which he aimed the gun; Kevin Hambrick's van was parked in the driveway; Steppan was familiar with the home and the family members who lived there; and Steppan had made multiple phone calls earlier in the day to locate Kevin and then to threaten him. It argued that based on this evidence, even though Steppan may not have aimed the gun directly at a human target, his "actions constituted a clear and conscious disregard of safety and the creation of a substantial risk of resulting death or great bodily harm." (Doc. 19-1, p. 7). The appellate court concluded that this mental state coupled with Steppan's actions supported the attempted murder conviction beyond a reasonable doubt. *Id.*

The question for this Court on habeas review is whether the state court's decision was contrary to or an unreasonable application of Supreme Court precedent. 28 U.S.C. § 2254(d). The applicable Supreme Court precedent, *Jackson v. Virginia*, 443 U.S. 307 (1979), stands for the proposition that, the evidence, viewed in the light most favorable to the state, is sufficient to support a conviction so long as any rational trier of fact could find the essential elements of the offense to have been proved beyond a reasonable doubt. Here, the state court decision was not "contrary to" *Jackson* because the court referenced *Jackson* and correctly identified the Supreme Court's standard for resolution of a sufficiency of the evidence claim.

That said, this Court must determine whether the state court's application of *Jackson* was unreasonable. A *Jackson* claim must clear a "high bar" on habeas review because review is doubly deferential; the state court must defer to the jury's responsibility to weigh the evidence, and the federal habeas court may overturn the state court's decision only if it was "objectively unreasonable." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). And, as previously noted, the "unreasonable application" standard is intentionally difficult to meet. See, *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011). Under *Harrington*, a state court's decision is reasonable, even if incorrect, so long as "fairminded jurists could disagree" on the resolution of the issue in question. *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017).

The state court's decision in Steppan's appeal was not objectively unreasonable. There was sufficient evidence supporting Steppan's identity as the gunman including, testimony that Steppan admitted to a police officer that he shot at the house and testimony that he made violent threats toward Kevin Hambrick earlier on the day of the shooting. His girlfriend testified that she drove him to the Sonic restaurant near the time of the shooting and that Steppan left the vehicle and was

out of her sight for a brief time. The jury also heard her earlier recorded statement[4] that she dropped Steppan off at the barbecue restaurant next door to Kevin Hambrick's house and drove to the Sonic restaurant to wait for Steppan, who was out of breath when he met her there. There was also evidence that two men standing across the street saw the gunman go toward Sonic after the shooting.

On the question of whether Steppan had the specific intent to kill when he shot into the Hambrick house, the state court cited the following evidence in concluding Steppan had the required mental state to support the attempted murder conviction beyond a reasonable doubt: the lights were on in the upstairs room that Steppan targeted when he fired the gun; Kevin Hambrick's van was parked in the driveway; and Steppan was familiar with the home and knew that several other family members (including children) lived in the home with Kevin and Connie Hambrick. These facts weighed against the suggestion that Steppan did not know the home was occupied when he discharged the gun. Further, the evidence that Steppan had made several calls throughout the day attempting to locate Kevin and when he finally reached him, threatened him with bodily harm further supports the conclusion that Steppan had the requisite mental to support the attempted murder conviction beyond a reasonable doubt.

Steppan argues vigorously that the appellate court incorrectly decided the question of intent. (Doc. 1, p. 19; Doc. 12, p. 5; Doc. 12-1, pp. 4-12; Doc. 29, pp. 6-13). Specifically, he contends a finding that he had a "conscious disregard of safety" and created "a substantial risk of resulting death or great bodily harm" did not amount to a specific intent to kill, which is the required element under Illinois law for a charge of attempted murder. He argues that instead, the

---

[4] Steppan argued on appeal that Steppan's girlfriend repudiated this statement, claiming that police had forced her to make it. (Doc. 19-3, p. 12).

court's findings are consistent with the mental state for lesser offenses, such as involuntary manslaughter or reckless homicide. (Doc. 12-1, p. 4).

The elements of a state crime and the determination of what is required to prove the elements are questions of state law. *See Bates v. McCaughtrey*, 934 F.2d 99, 102-03 (7th Cir. 1991). "When a state court enters or affirms a conviction, it is saying that the evidence satisfies the legal norms. These norms are for the state to select. State law means what state courts say it means." *Bates*, 934 F.2d at 102 (citing *Garner v. Louisiana,* 368 U.S. 157, 166 (1961) ("We of course are bound by a State's interpretation of its own statute and will not substitute our judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court.")). Based on this authority, Steppan's argument that the state court used the wrong standard to determine that he had the requisite intent for an attempted murder conviction does not present a claim that is cognizable in a habeas action under Section 2254. "A federal court may not issue the writ on the basis of a perceived error of state law." *Jones v. Thieret*, 846 F.2d 457, 459-60 (7th Cir. 1988) (internal citations omitted).

Respondent and Steppan both note that a person's mental state, such as the intent to kill, may be inferred from their conduct and the circumstances surrounding the incident. (Doc. 18, p. 10; Doc. 29, p. 10). However, the cases cited by Steppan for the proposition that intent to kill must be proven with evidence that the gunman fired or aimed at a person are inapposite. (Doc. 29, p. 12). *Braxton v. United States*, 500 U.S. 344, 349-50 (1991) involved a federal offense where the relevant question was whether stipulated facts in the defendant's plea agreement (where he pled not guilty to attempted murder but guilty to lesser charges) would allow the court to apply the United States Sentencing Guidelines for the more serious offense. It does not support the premise

that intent to kill requires proof that shots were fired at an individual. Likewise, *People v. Trinkle*, 369 N.E.2d 888, 890, 68 Ill. 2d 198, 202 (1977) does not support the argument that a specific intent to kill cannot be found where the defendant was not aiming his gun at a person. (Doc. 29, p. 10). The conviction in *Trinkle* was reversed because the charging instrument and jury instructions were defective for failing to include the required element that the defendant had the specific intent to kill when he fired the gun; The sufficiency of the evidence of intent was not at issue.

The appellate court's conclusion that the evidence of Steppan's actions and the circumstances surrounding the offense was sufficient to establish the required mental state is certainly within the range of acceptable opinion. *See, e.g., Trejo*, 380 F.3d at 1034; *Cabrera v. Hinsley*, 324 F.3d 527, 533-534 (7th Cir. 2003). Given the previously detailed evidence that was before the jury, this Court cannot say the decision affirming the jury's finding of guilt was objectively unreasonable or outside the boundaries of fairminded jurists' range of opinion. The state court applied the correct standard to gauge the sufficiency of the evidence and its application of Supreme Court precedent was reasonable.

Accordingly, Steppan is not entitle to habeas corpus relief on this point.


### Steppan was Denied the Effective Assistance of Counsel

A claim of ineffective assistance of counsel must be analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). Analysis under *Strickland* and on habeas review under Section 2254 are both highly deferential. Where, as here, both apply, the review is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Further, because *Strickland* sets forth a general standard, "the range of reasonable applications is substantial." *Ibid.*

In order to show ineffective assistance of counsel under *Strickland*, a petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong"). *Strickland*, 466 U.S. at 687-88. A petitioner must satisfy *both* prongs of the *Strickland* analysis to be eligible for habeas relief. There is no mandatory order for the analysis and a habeas court is not required to address both prongs if the petitioner has failed to make a sufficient showing on one. *Id.* at 697.

Under the first *Strickland* prong, the Court must inquire into "the objective reasonableness of counsel's performance." *Harrington*, 562 U.S. at 110. "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Id.* To avoid the temptation to second-guess counsel's assistance, there is a strong presumption of adequate assistance and the exercise of reasonable professional judgment. *Id.* at 107-08. Indeed, a petitioner's right to effective assistance of counsel is violated only when counsel's conduct, in light of all the circumstances, "[was] outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To satisfy the second prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. Ultimately, "[t]he focus of the *Strickland* test for prejudice … is not simply whether the outcome would have been different; rather, counsel's shortcomings must render the proceeding fundamentally unfair or unreliable." *Gray v. Hardy*, 598 F.3d 324, 331 (7th Cir. 2010).

Again, this Court's task is to determine whether the state court's decision was contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). On the claim of ineffective assistance, the relevant state court decision is the Illinois Appellate Court's Order affirming the dismissal of Steppan's post-conviction petition. (Doc. 19-2). *See Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

Steppan maintains that his trial counsel should have impeached Connie Hambrick – who testified at trial that Steppan had threatened to kill her husband – with her statements to police immediately after the incident in which she never mentioned the alleged threat. Instead, she told police that Steppan had threatened to "kick Kevin's ass" and make him "pay" for accusing Steppan of domestic violence. Steppan argues that Connie's prior statements omitting the death threat should have been used to impeach her and were admissible as substantive exculpatory evidence that Steppan did not intend to kill Kevin and never threatened his life, and the attorney's failure to pursue these avenues deprived him of effective assistance of counsel.

Applying the *Strickland* test, the Illinois Appellate Court found that defense counsel's handling of Connie's cross-examination and decision not to seek admission of the prior statements was reasonable trial strategy and did not amount to deficient performance. Specifically, that court found that defense counsel adequately cross-examined Connie and pointed out the discrepancy between her early statements and trial testimony, thus informing the jury that Connie did not tell police about the alleged death threat. (Doc. 19-2, pp. 5-6). The court further concluded that Counsel's decision against seeking to admit Connie's prior statements was a prudent move because the admission of the statements, including information about Steppan talking about obtaining a gun, assaulting his cousin and the cousin's wife, violating his conditions of parole, and failing to take responsibility for a car crash because of the conditions of his parole, could have been harmful

to Steppan's defense. (Doc. 19-2, p. 5). As to Steppan's characterization of Connie's prior statements as "inconsistent" with her trial testimony, the court found that her failure to tell the police of the death threat was more akin to an omission than an inconsistency. *Id.* The court also concluded that Steppan was not prejudiced by counsel's alleged errors in light of the strength of the evidence against him. (Doc. 19-2, p. 6).

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The question for this Court is not whether it believes trial counsel was ineffective. Rather, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. In that vein, § 2254, as amended by AEDPA, "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further." *Harrington*, 562 U.S. at 102. As the Seventh Circuit has observed, "the bar for establishing the unreasonableness of a state court's application of *Strickland* 'is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus.'" *Jones v. Brown*, 756 F.3d 1000, 1007 (7th Cir. 2014) (citing *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009)).

Here, Steppan does not come close to clearing the bar. He argues the court incorrectly concluded that Counsel's cross-examination was adequate because Connie's testimony on the death threat was the "only evidence" of intent to kill and thus, Counsel's failure to impeach her resulted in prejudice. (Doc. 1, pp. 20-21; Doc. 29, p. 15). He also takes issue with the court's characterization of Connie's prior statements and trial testimony as not being inconsistent. He claims Connie's prior statements would have been admissible as substantive evidence that he lacked intent to kill, and that the harmful portions of the statements would have been kept out of

evidence as irrelevant, prejudicial, or prior bad acts. (Doc. 29, pp. 16, 18). Steppan therefore urges this Court to find that the appellate court unreasonably applied *Strickland*.

Steppan's arguments are not persuasive. Contrary to his belief, there is no assurance Counsel could have succeeded in admitting only the helpful portions of Connie's statements while excluding the harmful information. And, the appellate court's conclusion that the prior statements were not inconsistent does not fall outside the range of reasonable opinion. Further, the court did not unreasonably apply *Strickland* when it found that Counsel's decision not to seek admission of the statements or use them for impeachment represented a reasonable trial strategy.

Steppan also argues that Counsel's impeachment of Connie with her prior statement "would have effectively eliminated all direct evidence supporting the intent element." (Doc. 29, p. 19). But he overlooks the fact that Counsel did point out to the jury that Connie failed to tell police about the death threat, thus calling the truthfulness of her testimony into question. It was up to the jury to weigh the credibility of Connie's claim that Steppan threatened to kill Kevin Hambrick. Even if Counsel had impeached Connie with her prior statements, this would not have removed Connie's trial testimony from the jury's consideration. Moreover, there was other circumstantial evidence of Steppan's intent. As such, Steppan's arguments do not demonstrate the appellate court's finding that he was not prejudiced by Counsel's performance was unreasonable.

In sum, the Illinois Appellate Court reasonably applied the correct Supreme Court precedent in assessing the merits of Steppan's ineffective assistance claim. The court's conclusion that trial counsel was not ineffective for declining to seek introduction of Connie Hambrick's prior statements was well within the boundaries of permissible differences of opinion among fairminded jurists in applying *Strickland*. *See Harrington*, 562 U.S. at 102. As the Petition reveals no error that would support habeas corpus relief as to this point, this action will be dismissed.

## Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Steppan need not show that his appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), but he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Id*. at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). If the district court denies the certificate, a habeas petitioner may request a certificate of appealability from the court of appeals. FED. R. APP. P. 22(b)(1)-(3).

For the reasons detailed above, the Court has determined that Petitioner has not stated any grounds for habeas relief. Furthermore, no reasonable jurist would find it debatable whether this Court's rulings were correct. Thus, Petitioner has not made "a substantial showing of the denial of a constitutional right." Accordingly, the Court denies a certificate of appealability.

## Conclusion

Steppan's Petition for habeas corpus relief under 28 U.S.C. § 2254 (Docs. 1, 12) is **DENIED**. This cause of action is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter judgment accordingly.

If Petitioner wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a)(1(A). A motion for

leave to appeal *in forma pauperis* ("IFP") must set forth the issues Petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

**IT IS SO ORDERED.**

**DATED: March 26, 2019**

s/ STACI M. YANDLE
United States District Judge